OPINION
Defendant-appellant, Richard P. Smith, appeals from a judgment of the Franklin County Municipal Court, Environmental Division, finding him guilty of theft of city services in violation of R.C. 2913.02(A)(2). Defendant assigns a single error:
 THE TRIAL COURT'S FINDING OF [sic] DEFENDANT-APPELLANT GUILTY OF THEFT WENT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Because the judgment of the trial court is supported by the manifest weight of the evidence, we affirm.
Defendant was charged with operating a solid waste transfer facility without a permit in violation of R.C. 3734.11, and with theft under R.C.2913.02(A)(2). The charges arose out of an incident on March 9, 2000, in which defendant allegedly transferred or disposed of solid waste into a city of Columbus refuse truck from the property located at 2390 Innis Road, a site not licensed or permitted to operate as a solid waste transfer facility and not found within the city of Columbus.
The matter was heard by a jury beginning on January 23, 2001, and resulted in a verdict finding defendant not guilty of operating a solid waste transfer facility without a permit, but finding him guilty of theft, a misdemeanor of the first degree. On appeal, defendant contends the judgment of the trial court is not supported by the manifest weight of the evidence.
When presented with a manifest weight argument, we engage in a limited weighing of the evidence to determine whether the jury's verdict is supported by sufficient competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt. State v. Thompkins (1997), 78 Ohio St.3d 380 ("When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting evidence"). State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387, unreported. Determinations of credibility and weight of the testimony remain within the province of the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230.
The state's case against defendant primarily was based on the testimony of Deputy Rick Klema, an environmental officer for the county with the Franklin County Sheriff's office. According to Klema, in March 2000, he was traveling through the area of his responsibility when he noticed a Ryder truck parked at 2390 Innis Road ("the property"), with "quite a bit of waste material * * * accumulating on the property." (Tr. 46.) As a result, he came back to survey the property, not located in the city of Columbus, to determine if the owner was hauling waste material to the property.
In surveillance the next day from across the street, Klema observed a Ryder truck, later determined to be rented by defendant, pull onto the property. A few minutes later, Klema observed a city of Columbus refuse truck arrive and park on the roadway for a couple of minutes. The driver went into the property, came back to his truck, and backed his truck into the property, up to the Ryder truck. At that point, the driver exited the truck; Klema photographed the driver outside his truck, with the city truck backed up to the open Ryder truck. Klema then observed several individuals, already on the property, who began to take material out of the back of the Ryder truck and place it into the city's refuse truck. After the hopper was activated to crush the material, the driver returned to the truck and left. According to Klema, not only was defendant on the property at the time the city refuse truck stopped in front of the Ryder truck, but defendant did not pay for the services.
On cross-examination, Klema confirmed his testimony on direct examination, stating that the driver, later identified as Dewayne Price, "pulled up in front of the house * * * stopped in the middle of the road, exited his truck, walked onto the property, walked up to the house, went in, came back out with Mr. Smith. Mr. Smith went back in the house. Mr. Price got in the truck, pulled up, backed onto the property. They loaded the material in the truck and Mr. Price left." (Tr. 96.) Based on an interview with Price, Klema concluded the truck had made at least two trips to the property, the one he observed on March 9 and one on March 14.
The city also offered the testimony of Price, who admitted he was the driver of the truck depicted in the picture Klema referenced, and further admitted he picked up items on March 9, 2000, from the back of the Ryder truck on the property. According to Price, he stopped at the property because earlier that morning he had been in a McDonald's at Northern Lights where a man asked him to come to the property and pick up some items. After leaving the McDonald's, Price went to the property and backed up the city refuse truck to the Ryder truck; a couple of couches were thrown into the truck. According to Price, defendant asked him to stop by the following week. In response, defendant drove by on March 14, but because Price spotted someone following him, he did not stop at the property.
In cross-examination, however, Price became less certain of some of the details to which he had testified. For example, he became confused about the day he met defendant at the McDonald's, and ultimately concluded he could not recall whether it was the day of, or day before, March 9. He further testified at one point that defendant offered him money, but retracted that statement and stated defendant did not offer him money; instead Price was given a washing machine.
Ultimately Price's testimony deviated so far from his statement given to Klema following the incident that the state was permitted to impeach Price's testimony. On re-direct, Price again testified that when he was at the McDonald's defendant asked him to pick up trash at the property, and on March 9, 2000, defendant did so. Someone at the property asked him to come back the next week and, with Gregory Franklin, he returned to the property on March 14. Franklin testified that on March 14 items were put in the truck, but he does not know if defendant was at the property at the time.
Through his witnesses, defendant offered his own explanation of the March 9 events. According to Albert Mincey, on March 9 "the trash guy came in the yard because we was having a sale, we was putting out for a sale. He seen us. He came in, he pulled in, he talked to my supervisor, which is Tony Falls," defendant's son. (Tr. 256.) Price begged Falls for a washing machine and a dryer, explaining he had six children and his washing machine and dryer were not functional. Falls told Price he would give Price a new one; Mincey dropped the washing machine and dryer off, with two other men, at Price's home. Defendant was not present at the time of the March 9 encounter.
Similarly, Clifton Falls, defendant's son, testified defendant was not at the property when the refuse truck arrived. Rather, at 6:30 a.m. each day defendant took Falls' sister to school. Asked about the probability of defendant meeting Price at the McDonald's on Cleveland Avenue, Falls explained it would be highly unlikely, as defendant did not eat red meat. Invited to explain the events of March 9, Falls testified that they were setting up a yard sale at the property. Price came in with the city refuse truck, asking about a washing machine and dryer Falls had. Price explained he would do a favor in exchange for the appliances. Specifically, Price said "he would clean up the yard, pick up the trash." (Tr. 274.) Falls explained he took care of the trash at the property, but noted Price could take a few bags that Falls was taking from the house and that ultimately were put in the truck. Falls explained he could get a crew to deliver a washing machine and dryer to Price's house. When Price asked how much it would cost, Falls explained it would cost no money. According to Falls, Agape Service Company, defendant's company operating at the property, was in the business of serving others.
Falls testified Price came back again, asking if they had any other trash. Falls, however, could not state definitively whether any trash was put into a city refuse truck on that date. Moreover, Falls stated that the day prior to his own testimony at trial, Price had approached him and admitted he had lied in his trial testimony.
R.C. 2913.02(A)(2) states:
 No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
* * *
 (2) Beyond the scope of the expressed or implied consent of the owner or person authorized to give consent[.]
The state premised the theft charge on (1) the property being outside the city of Columbus, (2) defendant's causing trash from the property to be deposited into, and disposed of in, a city of Columbus refuse truck, and (3) defendant's failing to pay for the services rendered.
In support of those elements, Klema testified (1) defendant was on the property at the time the city of Columbus refuse truck arrived, (2) a Ryder truck rented to defendant was on the property, and (3) trash was taken from the Ryder truck, put into the city of Columbus refuse truck, and disposed of from that site. Defendant not only was on the property, but according to Klema, spoke with Price before Price took the trash. According to Klema, defendant did not pay for the services rendered to him on March 9, 2000.
Unquestionably, contradictory and impeaching evidence also were offered. Price not only contradicted Klema, but contradicted himself during the course of his testimony. Defendant pointed out the history between Klema and the alleged vendetta Klema had for defendant due to prior incidents between them. Mincey and Falls both indicated they had participated in conversation with Price in the courthouse, in which Price admitted he had lied in his testimony.
Nonetheless, the contradictory and impeached testimony raises issues of credibility for the jury to resolve. Here, the jury chose to believe at least the essential elements of Klema's testimony, and may also have believed portions of Price's testimony, including what may have been the only consistent testimony he rendered: he met defendant at a McDonald's, defendant asked him to pick up trash at the property, on March 9, 2000, he pulled the city refuse truck up to the Ryder truck at the property, and he received trash from the Ryder truck into his truck without compensation to the city of Columbus. Given the testimony that supports the jury's verdict, we cannot say the verdict is against the manifest weight of the evidence, despite the testimony of Falls and Mincey.
Indeed, the evidence presented the jury a basis to discount testimony favorable to defendant. For example, although the worker who was with Price on March 9, 2000 was unable to corroborate much of his testimony, she admitted she was not paying attention to the events at the property on March 9, 2000, but instead was reading a magazine. Moreover, some of her testimony corroborated Klema, making him a more credible witness before the jury. While Falls and Mincey testified to a March 9 scenario completely different from Klema's, their relation to defendant, as well as the prosecution's exploration of the underpinnings to their version of the events, left their testimony subject to question.
Because of the divergent testimony given in this case, it represents a prime example of the role of the jury in sorting through the disparate testimony, resolving the conflicts, and determining which witnesses are to be believed. On this record, we cannot find the jury lost its way in that function, and so we overrule defendant's single assignment of error, and affirm the judgment of the trial court.
Judgment affirmed.
McCORMAC and LAZARUS, JJ., concur.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.